IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | CR  11-01364-TUC-JGZ (HCE) |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Stanley Nelson, Jr., ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant's Motion to Suppress.  (Doc. 23.)  On December 5, 2011, Magistrate Judge Hector C. Estrada issued a Report and Recommendation recommending Defendant Stanley Nelson, Jr.'s Motion to Suppress be denied.  (Doc. 46.) Defendant Nelson filed his Objection to the Report and Recommendation (Doc. 45) and the Government filed its Response.  (Doc. 48.)  Upon independent review and for the reasons delineated herein, the Report and Recommendation is adopted.

**I. STANDARD OF REVIEW**

The Court reviews *de novo* the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The Court reviews for clear error the unobjected-to portions of the Report and Recommendation.  *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

## II. PROCEDURAL AND FACTUAL BACKGROUND

The factual background contained in Magistrate Judge Estrada's Report and Recommendation (Doc. 42) is adopted by this Court.[1]

## III. DISCUSSION OF DEFENDANT'S OBJECTIONS

Defendant contends that the Report and Recommendation is erroneous on three grounds: (1) the judge applied the incorrect standard to analyze the reasonableness of the agents' actions; (2) even if the search was properly analyzed as an extended border search, the search was still unreasonable; and (3) Defendant's detention constituted a *de facto* arrest without probable cause. For the following reasons, the Report and Recommendation is adopted.

**A. The Magistrate Judge properly analyzed the search and seizure of Defendant's vehicle pursuant to the extended border search doctrine**

Defendant argues that the Magistrate Judge incorrectly identified the extended border search doctrine as the controlling standard and, even if controlling, the Magistrate erred in its application to this matter. The Court disagrees.

Searches at or near the international boundary of inbound and outbound persons are conducted "pursuant to the long-standing right of the sovereign to protect itself," and generally do not require a warrant or individualized suspicion. *United States v. Ramsey*, 431 U.S. 606, 616 (1977); *see also United States v. Sutter*, 340 F.3d 1022, 1025 (9th Cir.), *amended,* 348 F.3d 789 (9th Cir. 2003). A border search may be conducted at the "functional equivalent" of a border or at an "extended" border. *United States v. Cardona*, 769 F.2d 625, 628 (9th Cir. 1985); *see also Almeida-Sanchez v. United States*, 413 U.S. 266, 272 (1973).

---

[1] Defendant notes one factual discrepancy. The Magistrate Judge found that the agents discovered one loose and one missing screw when examining the gas fill area. Agent Blackburn testified to this effect on direct examination. As Defendant correctly notes, on cross-examination Agent Blackburn clarified that there was only one screw missing and that the fill tube was loose inside the housing unit. This slight factual difference, however, does not change the legal analysis. As noted in section IIIB, based on the agents' training and experience, the agents' observations of the gas fill area and the underside of the truck were indicia that drugs may have been hidden in various areas of the vehicle and that further investigation was warranted.

An extended border search is defined as a "search away from the border where entry is not apparent." *United States v. Guzman-Padilla*, 573 F.3d 865, 878 (9th Cir. 2009) (quoting *United States v. Corral-Villavicencio*, 753 F.2d 785, 788 (9th Cir. 1985)). Because extended border searches normally intrude more on an individual's expectation of privacy, the reasonableness of an extended border search depends on whether law enforcement possess: (1) "reasonable certainty" that the international boundary has been crossed by the suspect vehicle and (2) reasonable suspicion that the subject of the search was involved in criminal activity. *Guzman-Padilla*, 573 F.3d at 877-78; *see United States v. Sahanaja*, 430 F.3d 1049, 1053-54 (9th Cir. 2005). If both prongs are met, agents are entitled to conduct a search of the accused's vehicle. *See id.* at 882.

### 1. Reasonable Certainty of Border Crossing

The "'totality of the surrounding circumstances, including the time and distance elapsed [from the border] as well as the manner and extent of surveillance...'" must be examined in assessing the reasonable certainty of a recent border crossing. *Guzman-Padilla*, 573 F.3d at 879 (quoting *Alexander v. United States*, 362 F.2d 379, 382 (9th Cir. 1966)). The court must ascertain whether "'the totality of the facts and circumstances within the officers' knowledge and of which they have *reasonably trustworthy information* [is] sufficient in *the light of their experience* to warrant a firm belief that a border crossing has occurred.'" *Id.* (quoting *United States v. Tilton*, 534 F.2d 1363, 1366-67 (9th Cir. 1976))(emphasis in original). A law enforcement officer need not have actually observed the suspect vehicle crossing the border. *United States v. Bennett*, 363 F.3d 947, 950 (9th Cir. 2004). The standard for reasonable certainty is higher than that required for probable cause, but does not require proof beyond a reasonable doubt. *Guzman-Padilla*, 573 F.3d at 880 (citation omitted).

Magistrate Judge Estrada concluded that Border Patrol Agent Blackburn was reasonably certain that Defendant crossed the border. The record supports this conclusion. The totality of facts and circumstances within Agent Blackburn's knowledge in light of his training and experience were sufficient to warrant his reasonably certain belief that

1  Defendant had recently crossed the border at the Papago Farms gate. At 6:30 a.m., Agent
2  Blackburn observed Defendant attempt to cross the border at the Papago Farms gate. Agent
3  Blackburn informed Defendant that he could not enter the United States through the Papago
4  Farms gate. He ordered Defendant to cross the border at the San Miguel gate, which was
5  approximately a two hour drive from the Papago Farms gate and thus a four hour round-trip.
6  Only two hours and forty-five minutes later, Defendant drove past the Papago Farms Base,
7  which is three miles north of the border and the Papago Farms gate. Agent Blackburn
8  explained that he believed Defendant had crossed through the Papago Farms gate and
9  traveled north from that gate because the road on which Defendant drove was not intersected
10 by any other road between the gate and the Papago Farms Base.

11 Defendant asserts that Agent Blackburn's observations do not rise to the level of
12 reasonable certainty because there are other explanations for his arrival at the Papago Farms
13 Base two hours and forty-five minutes later. Defendant notes that a reckless driver might
14 accomplish the same drive in two hours and forty-five minutes. Further, Defendant notes
15 that he never informed Agent Blackburn that he crossed the border at the Papago Farms gate.
16 Proof of the border crossing beyond a reasonable doubt, however, is not the applicable
17 standard. *Guzman-Padilla,* 573 F.3d at 880. The Court therefore overrules Defendant's
18 objection to the Magistrate Judge's finding.

19 **2. Reasonable Suspicion of Criminal Activity**

20 Reasonable suspicion of criminal activity is not governed by any specific set of
21 factors. *United States v. Franco-Munoz*, 952 F.2d 1055, 1058 (9th Cir. 1991) (circumstances
22 sufficient to "paint a picture that would create in the mind of a trained border patrol agent a
23 reasonable suspicion that the [vehicle's occupants were] engaged in criminal activity."),
24 *overruled in part on other grounds by United States v. Montero-Camargo,* 208 F.3d 1122
25 (9th Cir. 2000). "Reasonable suspicion 'exists when an officer is aware of specific,
26 articulable facts which, when considered with objective and reasonable inferences, form a
27 basis for *particularized* suspicion.'" *United States v. Villasenor*, 608 F.3d 467, 473 (9th Cir.
28 2010) (quoting *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000))

1  (emphasis in original). With regard to border searches, factors to be considered in
2  determining whether reasonable suspicion exists to stop a vehicle include, but are not limited
3  to: "1) characteristics of the area; 2) proximity to the border; 3) usual patterns of traffic and
4  time of day; 4) previous alien or drug smuggling in the area; 5) behavior of driver, including
5  obvious attempts to evade officers; 6) appearance or behavior of passengers; 7) model and
6  appearance of the vehicle; and 8) officer experience." *Guzman-Padilla,* 573 F.3d at 881
7  (quoting *United States v. Garcia-Barron*, 116 F.3d 1305, 1307 (9th Cir. 1997)).

8      Ample evidence in the record supports the Magistrate Judge's conclusion that Agent
9  Blackburn had reasonable suspicion to believe that Defendant was engaged in criminal
10 activity. Agent Blackburn informed Defendant that he could not enter the United States
11 through the Papago Farms gate. Agent Blackburn directed Defendant to cross the border at
12 the San Miguel gate, which Defendant acknowledged.[2] As noted above, two hours and forty-
13 five minutes later, Agent Blackburn recognized Defendant's vehicle traveling north in the
14 United States from the area of the Papago Farms gate. Agent Blackburn knew that
15 Defendant could not have crossed into the United States within that time frame unless he
16 traveled through the Papago Farms gate; thus, had a particularized suspicion that Defendant
17 had disobeyed his order and entered the United States illegally through the Papago Farms
18 gate.

19     Defendant contends that the Magistrate Judge failed to take into account in his totality
20 of the circumstances analysis Defendant's lack of nervousness, his calm driving behavior and
21 the fact that he did not attempt to evade Agent Blackburn. Whether Defendant was calm or
22 non-evasive does not alter the conclusion that Defendant was reasonably certain of
23 Defendant's illegal crossing.

---

[2]Only members of the Tohono O'odham Indian Nation are permitted to cross the border through the San Miguel Gate. Previously, members of the Tohono O'odham were permitted to cross through the Papago Farms Gate. When Agent Blackburn sent Defendant to the San Miguel Gate, he did not know Defendant was a Gila tribe member and not a Tohono O'odham member. He discovered that Defendant was Gila during their second interaction.

### 3. Subsequent search of the vehicle

Because Agent Blackburn was reasonably certain that a border crossing had occurred and had reasonable suspicion that Defendant was engaged in criminal activity, agents were entitled to search Defendant's vehicle. *See Guzman-Padilla,* 573 F.3d at 882. Accordingly, Defendant's objections as to the reasonableness of the search conducted subsequent to the seizure of Defendant's vehicle are without merit. *See Guzman-Padilla*, 573 F.3d at 881-82; *Villasenor*, 608 F.3d at 473-74 (the reasonable suspicion determination turns on whether there are sufficient facts before a vehicle is stopped to warrant a particularized suspicion that the subject is engaged in criminal activity).

### B. Defendant's detention was reasonable

The Court rejects Defendant's argument that regardless of the legitimacy of the stop, agents subjected him to a *de facto* arrest without probable cause. Defendant was detained pursuant to a lawful extended border search for approximately one hour, during which time agents discovered evidence that the vehicle had been modified in a manner consistent with hiding drugs, thus requiring further detention to confirm or dispel their reasonable suspicions.[3]

The test to determine reasonableness of a border-related detention is "whether, under the totality of the circumstances, a reasonable innocent person would feel free to go after questioning, or, more specifically, whether the person would believe that he was being subjected to more than a temporary detention occasioned by border crossing formalities." *Guzman-Padilla,* 573 F.3d at 883 (quoting *United States v. Bravo*, 295 F.3d 1002, 1009-12 & n. 8 (9th Cir. 2002)). The government's powers are at their "zenith" when a roadside vehicle stop is authorized under the border search doctrine. *Id.* at 886 (citing *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004)). Two objective inquiries are pertinent to the reasonableness of the detention: one inquiry from the perspective of the detainee and the

---

[3] Defendant raises this argument for the first time in his Objections to the Magistrate's Report and Recommendation. The Magistrate Judge concluded that pursuant to the extended border search doctrine, the search was reasonable and supported by reasonable suspicion.

- 6 -

1  other from the perspective of law enforcement. *Id*. at 884. These inquires are often fused
2  into one analysis. *Id.*

3  First, the question from the perspective of the detainee is whether objective
4  circumstances indicate that a reasonable person would feel that indefinite custodial detention
5  is inevitable. *Guzman-Padilla,* 573 F.3d at 884; *see Kraus v. Pierce County*, 793 F.2d 1105,
6  1009 (9th Cir. 1986) ("[W]here force is used such that the innocent person could reasonably
7  have believed he was not free to go *and* that he was being taken into custody indefinitely, an
8  arrest has occurred.") (emphasis added).   Second, the level of intrusion and aggressive
9  police conduct must be a reasonable response to the investigating officer's legitimate
10 concerns. *Id*. at 884. "This assessment requires a fact-specific inquiry into whether the
11 measures used were reasonable in light of the circumstances that prompted the stop or that
12 developed during its course." *Id.* at 885 (quoting *United States v. Acosta-Colon*, 157 F.3d
13 9, 14-15 (1st Cir. 1998)).

14 The uncontested facts demonstrate that the measures used by agents were reasonable
15 in light of Defendant's illegal entry into the United States and the information gained during
16 the search of the truck.   Agent Blackburn, who was followed by Border Patrol Agent
17 Yescas, stopped Defendant two miles from the Papago Farms Base in the middle of the
18 desert. During the first ten to fifteen minutes of the detention, Agent Blackburn asked
19 Defendant whether he had understood what he had been told about not utilizing the Papago
20 Farms gate, and concluded that based on Defendant's eye contact that "he knew he'd done
21 something he shouldn't have done." Agents asked for permission to search the vehicle,
22 which was granted by Defendant. Defendant was asked to stand on the side of the road next
23 to his vehicle as agents inspected the vehicle. Agents Blackburn and Yescas examined the
24 gas fill area and observed that one screw was missing and the fill tube was loose inside the
25 housing, which indicted to the agents that the gas tank had been tampered with.[4]  Border

26

27  [4] Agent Blackburn clarified on cross-examination that only one screw was missing and the fill tube was loose. He explained that the significance of this was that the fuel tank had been
28  tampered with, which made it likely that drugs were in the fuel tank. Thus, the Magistrate Judge

1 Patrol Supervisor Vega climbed under the truck and noticed that the bolts attaching the bed
2 of the truck to the frame were scratched, the bolts had been "tooled" and the paint removed,
3 which suggested that the bed had been taken off the truck.

4     At this point, Defendant and his passenger were placed in Agent Blackburn's vehicle
5 and Defendant's truck was driven to the Papago Farms Base. It would not have been
6 possible for agents to lift the bed of the truck and inspect the gas tank for drugs at the site of
7 the stop. Rather, agents had to return to the Papago Farms Base, where their tools were
8 located, to properly inspect the vehicle. Pending their investigation, Defendant was placed
9 in a detention cell for approximately thirty to forty-five minutes. If the investigation failed
10 to reveal any illegal drugs, Agent Blackburn testified that agents would have reassembled the
11 vehicle and allowed Defendant and his passenger to go free.[5] The agents pursued their
12 investigation while detaining Defendant in a reasonable manner to insure their safety as they
13 searched the truck for contraband. Defendant was not subjected to any excessive force, and
14 if the truck had not contained illegal drugs, he would not have been inevitably detained.  In
15 other words, a reasonable innocent person would not have felt inevitably detained.  After
16 review of all of the facts and circumstances, the Court concludes that the scope of the
17 detention was reasonable. *See Nava*, 363 F.3d at 946.

18     Defendant also challenges the credibility of Agent Blackburn's testimony that
19 Defendant failed to recall the last name of "Manny" - the man who loaned him the truck.

---

21,22 incorrectly found that one screw was loose and another screw was missing; however, the judge nevertheless correctly concluded that the search revealed indicia that the vehicle had been tampered with and possibly contained illegal drugs.

23–28 [5]Agent Blackburn testified that he did not know whether anyone communicated to Defendant that he would be free to leave if drugs were not found. (Blackburn at p. 64.) Agent Blackburn also did not know whether Defendant was ever placed in handcuffs. (*Id.* at 63-64.) The absence of these facts does not alter the conclusion that Defendant was not placed under arrest because it was reasonable for the agents to drive Defendant to the Papago Farms Base and place him in a cell for approximately forty-five minutes as they completed their investigation. *See United States v. Nava*, 363 F.3d 942, 943, 946 (9th Cir. 2004) (holding that no arrest took place where the defendant was handcuffed, escorted 400 feet to the security office, patted down and searched, and locked in a security office for approximately four hours).

1  Agent Blackburn admitted that there was no reference to this fact in his report and it was an
2  important fact that should have been included.  The Court notes that Agent Blackburn
3  testified consistently throughout the evidentiary hearing.  Moreover, Defendant's statement
4  that he did not know Manny's last name is irrelevant in determining the reasonableness of
5  the extended border search because this fact was elicited after Defendant's vehicle had been
6  stopped.  The Magistrate Judge found Agent Blackburn credible and the record does not
7  undermine this conclusion.

**IV. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED as follows:

(1) United States Magistrate Judge Estrada's Report and Recommendation (Doc. 42) is ACCEPTED AND ADOPTED.

(2) Defendant's Motion to Suppress (Doc. 23) is DENIED.

DATED this 12th day of March, 2012.

Jennifer G. Zipps
United States District Judge